**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**NETJETS ASSOCIATION OF
SHARED AIRCRAFT PILOTS,**

      **Plaintiff,**

  v.                                            Civil Action 2:14-cv-2487
                                                      Judge Michael H. Watson
                                                      Magistrate Judge Jolson

**NETJETS, INC., et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff NetJets Association of Shared Aircraft Pilots' ("Plaintiff" or "Union") motions to compel. (Docs. 92, 99). For the reasons that follow, the motions are **DENIED without prejudice**. In addition, within fourteen days of this Opinion and Order, Defendants are **DIRECTED** to amend their discovery responses in accordance with their promise to do so in their opposition to Doc. 99. (Doc. 113 at 11). Moreover, the parties are **DIRECTED** to meet and confer to narrow their areas of disagreement, and to file a joint status report within twenty-one days of this Opinion and Order regarding the status of any remaining discovery disputes.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a labor organization representing approximately 3,000 pilots employed by Defendant NetJets Aviation, Inc. (Doc. 86 ¶ 4). Plaintiff brings suit against two entity Defendants, NetJets Aviation, Inc. and NetJets, Inc. (collectively, "NetJets"), as well as Steven Todd Weeber, former Vice President of Operational Quality and Standards for NetJets, and a number of John Doe Defendants. (*Id.* ¶¶ 5–9). Plaintiff alleges that Defendants Weeber and

1

Does gained unauthorized access to a confidential Union message board and obtained private Union communications. (*Id.* ¶ 17; *see id.* (alleging that "NetJets Senior Vice President and Global General Counsel Colleen K. Nissl admitted that NetJets had obtained specific confidential communications from the password-protected Message Board")).  Moreover, according to the complaint, NetJets has used social media to: coerce, intimidate, and retaliate against Union members for supporting the Union; interfere with the Union's internal election procedures; and ultimately undermine the Union's ability to represent its members. (*Id.* ¶ 20; *see id.* ¶¶ 21–36).  Based upon these allegations, Plaintiff alleges violations of the Stored Communications Act, 18 U.S.C. §§ 2701, 2707, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, Ohio Revised Code § 2913.04(B), and the Railway Labor Act, 18 U.S.C. § 2701.

**B.  Motions to Compel (Docs. 92, 99)**

Plaintiff's two motions to compel (Docs. 92, 99) are ripe and before the Court.

**1.  Doc. 92**

On August 17, 2016, Plaintiff filed a motion to compel concerning Plaintiff's second set of requests and second set of interrogatories. (Doc. 92).  Plaintiff separates the discovery it seeks into two categories.  The first pertains to four requests and three interrogatories regarding internal NetJets' communications related to the message board content and who provided the content to Defendants. (Doc. 92-1 at 4–5).  Defendants objected on the basis of attorney-client privilege among other things. (Doc. 92-3 at 57–62, 103–06).  Plaintiff contends in its motion that the privilege has been waived if it even applies.  The second category of discovery in Doc. 92 concerns Defendants' objections on the basis of attorney-client privilege to a range of other requests and interrogatories from Plaintiff's second set of discovery.  Plaintiff moves to compel Defendants to produce a privilege log.  Defendants respond by reiterating that the

communications are privileged, explaining that they will produce a privilege log once the searches are narrowed, and arguing that Plaintiff failed to satisfy its obligation to meet and confer under Fed. R. Civ. P. 37(a)(1) and S.D. Ohio Civ. R. 37.1 prior to filing its motion.

**2. Doc. 99**

Shortly after filing Doc. 92, Plaintiff filed another motion to compel on September 2, 2016. (Doc. 99). This second motion concerns Plaintiff's first set of interrogatories and second set of requests for production, both served on August 20, 2015. (*See* Doc. 99-1 at 3–4). Defendants responded on September 21, 2015, objecting to the requests and interrogatories on a number of grounds, including that they were overly broad, and that the information sought was protected by attorney-client privilege and/or the work product doctrine. (*See, e.g.*, Doc. 99-3 at 50–127). Plaintiff argues that Defendants have not satisfied their pre-motion promise to amend certain responses and to produce certain documents implicated by the requests. Moreover, the parties disagree over the proper set of custodians and search terms for finding responsive documents. Defendants contend again that Plaintiff failed to comply with its obligations under Fed. R. Civ. P. 37(a)(1) and S.D. Ohio Civ. R. 37.1. To this end, Defendants respond that they are in the process of amending their responses to a number of Plaintiff's discovery requests. Moreover, Defendants reiterate that they have been—and are still—committed to working with Plaintiff to refine the proposed search terms.

## II.  STANDARD

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Moreover, Rule 37 of the Federal Rules of Civil Procedure allows for a motion to compel discovery when a party fails to

answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3).

### III. DISCUSSION

#### A. The Motions to Compel

As a threshold requirement, the Rules of Civil Procedure require a party moving to compel discovery to certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Similarly, this Court's local rules forbid filing discovery motions "under any provision in Fed. R. Civ. P. 26 or 37 unless counsel have first exhausted among themselves *all extrajudicial means for resolving the differences*." S.D. Ohio Civ. R. 37.1 (emphasis added). "This is no idle formality or technical requirement." *Crozin v. Crown Appraisal Grp.*, No. 2:10-CV-00581, 2011 WL 3566004, at *2 (S.D. Ohio Aug. 15, 2011). "On the contrary, . . . obliging attorneys [and pro se parties] to certify to the Court that they have conferred in good faith results, in a large number of cases, in resolution of discovery disputes by counsel without intervention of the Court." *Steinmetz v. Harrison*, No. 1:14-CV-829, 2015 WL 4514541, at *2 (S.D. Ohio July 24, 2015) (quoting *Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001)).

Here, the parties have not exhausted all extrajudicial means for resolving their differences. Defendants devote much of their briefing of both motions to explaining why these issues are not properly before the Court. Their attached communications demonstrate that, at the time Plaintiff filed the motions, the parties were in the midst of attempting to come to a workable solution regarding their discovery disputes. (*See, e.g.*, Doc. 92-3 at 126–55 (Plaintiff's final letter to Defendants' prior to filing the motions to compel, which does not reference several

requests for production and all of the interrogatories at issue in Doc. 92); *id.* at 189 (Defendants' final letter to Plaintiff before the motions to compel, stating Defendants' understanding that there were no outstanding issues concerning Defendants' responses to Plaintiff's second set of interrogatories); *id.* at 198–204 (Defendants proposing alternative search terms and custodians, to which Plaintiff did not respond prior to filing the motions to compel); Doc. 107-1 ¶ 11 (declaration from Defendants' counsel stating that "Plaintiff never responded to NetJets' August 5 letter or to its . . . proposals for moving discovery forward"); *id.* ¶ 12 ("Plaintiff provided no advance notice to NetJets of its intent to file this Motion."); Doc. 113-1 ¶ 25 ("NetJets received no response to its proposal in its August 5 letter for searching its servers prior to the filing of this Motion.")). The Court is not convinced that the parties' dispute has reached impasse. For these reasons, the motions are denied without prejudice as premature.

### B. The Parties Are Directed to Meet and Confer Regarding Their Remaining Discovery Issues

Although the motions to compel are denied as premature, Defendants are not absolved of their discovery duties. Defendants represent in their opposition to Doc. 99 that they are "in the midst of reviewing and finalizing [their] amended responses" to a number of Plaintiff's discovery requests. (Doc. 113 at 11). They are **DIRECTED** to do so within fourteen days of this Opinion and Order. Moreover, the parties' briefing suggests that there is substantial overlap in their proposals to solve their discovery disputes and narrow their areas of disagreement. (*See, e.g.*, Doc. 113-1 ¶ 18 ("NetJets has consistently requested further meet and confer efforts to resolve this and prior discovery disputes without involving the Court and believes the present Motion was prematurely filed."); *id.* ¶ 22 (stating that the parties have identified an "agreed-upon [set of] custodians"); Doc. 113 at 14 ("NetJets and Plaintiff agree on 12 of Plaintiff's proposed 15 individual custodians . . . ."); *id.* at 25 ("NetJets agreed in its August 5 letter that it would

amend its responses to Rog Nos. 12–13, 15, 21–27, 29–31, 34, and 36); *see also* Doc. 125 at 11; Doc. 113-1 ¶ 26).  The parties are therefore **DIRECTED** to meet and confer to narrow their areas of disagreement, and to file a joint status report within twenty-one days regarding the progress of their conference and the status of any remaining discovery disputes.

Finally, the Court offers the parties additional guidance as they narrow their discovery issues.  First, Plaintiff makes much of Defendants' failure to provide a privilege log in support of their objections based on attorney-client privilege.  At this stage, the Court is not persuaded by Plaintiff's argument that Defendants' failure to provide privilege logs means necessarily that they waive the privilege.  *See Casale v. Nationwide Children's Hosp.*, No. 2:11-CV-1124, 2014 WL 1308748, at *8 (S.D. Ohio Mar. 28, 2014) ("If Plaintiff failed to produce the documents or a timely privilege log *after* the documents were deemed responsive, waiver could be an appropriate remedy." (emphasis in original)); *see id.* (explaining that *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005), which Plaintiff cites to support his waiver argument, "eschewed a per se rule that failure to produce a privilege log within thirty days constitutes automatic waiver").  And while it understands, at least as to some of the discovery at issue, Defendants' argument that the parties must narrow the searches before Defendants can provide a privilege log, it cautions Defendants that they must eventually produce a privilege log to support their privilege claims.  *See* Fed. R. Civ. P. 26(b)(5); *The Ohio Org. Collaborative v. Husted*, No. 2:15-CV-01802, 2015 WL 7008530, at *4 (S.D. Ohio Nov. 12, 2015) ("That Rule requires that a party who resists discovery based on privilege produce a privilege log . . . ."); *see also Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) ("The privilege log must be detailed enough to prove that the communications in question were in fact confidential communications relating to legal advice.").

Second, the Court understands that Plaintiff would like to discover how Defendants came about the message-board communications at issue in this case. (*See, e.g.*, Doc. 116 at 4–5). The Court directs the parties' attention to Defendants' amended response and objections to Plaintiff's interrogatory number 39. The amended response appears to go a fair distance toward providing Plaintiff that information and toward settling part of the parties' discovery dispute. (*See* Doc. 107-1 ¶ 9 ("The parties proposed the amendment of NetJets' response to Rog No. 39 as a way to provide Plaintiff with information requested in its Second Set of Interrogatories without straying into communications that were likely to be privileged. It therefore made sense that Plaintiff did not raise any issues regarding its Second Set of Interrogatories in its June 24, 2016 meet and confer correspondence, because it had previously assured NetJets that its amended response to Rog No. 39 was a large step toward resolving the disputes involving its attorney-client privilege objections.")). To be sure, Plaintiff has reiterated that it wants to discover more than just the information at issue in interrogatory number 39. However, in the interim, rather than devoting significant time and resources to premature motions practice, the information provided in the amended response to interrogatory number 39 gives Plaintiff a path to discover the information it seeks.

Third, it is clear from the parties' briefing and accompanying exhibits, that they have a habit of speaking past each other when trying to solve issues and a habit of failing to follow through on requests to narrow their disputes. That needs to stop. Such conduct leads to unnecessarily contentious communications and motions that impede the progress of this case. Given the parties' conduct in discovery thus far, the parties are **DIRECTED** to contact the Court for a status conference before filing any discovery motion. Failure to comply will result in the denial of the motion.

### III.  CONCLUSION

For the reasons stated:

- The motions to compel (Docs. 92, 99) are **DENIED without prejudice**.

- Within fourteen days of this Opinion and Order, Defendants are **DIRECTED** to amend their discovery responses in accordance with their promise to do so in their opposition to Doc. 99.  (Doc. 113 at 11).

- The parties are **DIRECTED** to meet and confer to narrow their areas of disagreement, and to file a joint status report within twenty-one days of this Opinion and Order regarding the status of any remaining discovery disputes.

### Motion to Reconsider

Any party may, within fourteen days after this Opinion Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the Order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days after.  The District Judge, upon consideration of the motion, shall set aside any part of this Opinion and Order found to be clearly erroneous or contrary to law.  This Opinion Order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio Civ. R. 72.3.

IT IS SO ORDERED.


Date: October 12, 2016                                              /s/ Kimberly A. Jolson
                                                                                KIMBERLY A. JOLSON
                                                                                UNITED STATES MAGISTRATE JUDGE