UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NetJets Association of Shared
Aircraft Pilots,

    Plaintiff,

v.

NetJets Aviation, Inc., *et al*.

    Defendants.

Case No. 2:14-cv-2487

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

This case arises out of an already-resolved state court discovery dispute. The Delaware Court of Common Pleas ordered NetJets Association of Shared Aircraft Pilots ("NJASAP") to produce certain screenshots of its intra-union message board. Dissatisfied with that order, NJASAP moves this Court to intervene. But this Court, like all lower federal courts, lacks jurisdiction over "covert appeals" of state court orders under the *Rooker-Feldman* doctrine. *RLR Invs., LLC v. City of Pigeon Forge, Tenn.*, 4 F.4th 380, 392 (6th Cir. 2021) (quoting *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 892 (6th Cir. 2020)). For these reasons (elaborated on below),[1] the Court **DENIES** NJASAP's motion for a temporary restraining order ("TRO").

---

[1] Because the Court decides this case on jurisdictional grounds, it does not analyze the merits. To do so would be inappropriate. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause[.]"); *Sinochem Intern. Co. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422 (U.S. 2007).

## I.  BACKGROUND

### A.  Prior Federal Litigation

This lawsuit began in 2014 when NJASAP sued NetJets Aviation, Inc., NetJets, Inc., and (eventually) Steven Todd Weeber (collectively, "NetJets"). Compl., ECF No. 1.  In its Second Amended Complaint, NJASAP alleged NetJets "accessed and obtained confidential communications from the password-protected NJASAP Private Pilots Message Board," which allows NetJets' Union-member pilots to communicate privately with one another ("Message Board"). Second Am. Compl. ¶ 11–18, ECF No. 86.  Relatedly, NetJets (through Weeber) allegedly impersonated NJASAP members on various social medial platforms and interfered with NJASAP activity. *Id.* ¶ 20–36.  NJASAP alleged those actions violated multiple federal and state statutes. *Id.* ¶ 37–72.

The parties settled the case in March 2017.  After reaching a settlement agreement ("Settlement Agreement"), they filed a stipulation of dismissal requesting the Court to retain jurisdiction to enforce that agreement.  ECF No. 143.  The case has laid dormant since then (more than seven years).

### B.  Ongoing Ohio State Court Litigation

NetJets Chief Operating Officer Alan Bobo filed a defamation lawsuit against NJASAP in the Delaware County Court of Common Pleas in September 2023. *Bobo v. NetJets Ass'n of Shared Aircraft Pilots*, 23 CV H 09 0662 (Delaware Cnty. C.P. Ct.).  That court summarized the facts of the case as follows:

> Bobo alleges that the Union, on September 6, 2023, published a statement to its members ("First Defamatory Statement") claiming that Bobo, or someone who looked like him, had emerged from his home and thrown a baseball at a mobile-media truck hired by the Union while that truck drove through Bobo's neighborhood, resulting in damage to the truck ("Truck-Baseball Incident"). The First Defamatory Statement informed the Union's members that law enforcement was investigating the incident. On September 13, 2023, the Union published a second statement ("Second Defamatory Statement"), in which the Union claimed that a police report supported the Union's contention that an individual threw a baseball at the mobile-media truck near Bobo's house, though Bobo's address was redacted in that police report.

Mot. Ex. B ("Discovery Order"), ECF No. 148, PAGEID # 3953–54.

In August 2024, as part of civil discovery, Bobo requested screenshots of all communications between NJASAP members on the Message Board that related to the First Defamatory Statement, the Second Defamatory Statement, Bobo, the defamation lawsuit, or the Truck-Baseball Incident. *Id.* at PAGEID # 3955. NJASAP objected to the discovery request, citing: (i) union privilege and associational privilege under the First Amendment; (ii) federal labor law; and (iii) the Settlement Agreement. *Id.* NJASAP also moved for a protective order, in which it asked the state court to review the Settlement Agreement. *Id.*

The state court granted Bobo's motion to compel ("Discovery Order"). *Id.* at PAGEID # 3963. The state court (i) denied the existence of a union privilege and associational privilege, *id.* at PAGEID # 3957–59, and (ii) rejected the argument that federal labor law protects against disclosure of routine communication among union members, *id.* at PAGEID # 3960–61. On (iii) the Settlement Agreement, the state court wrote:

> The Union fails to meet its burden to justify a protective order. Bobo is not a party to this alleged confidential settlement agreement. The Union fails to provide any details about the scope of that agreement's discovery bar or how it applies to the discovery sought by Bobo. Moreover, no contract between two private parties requiring confidentiality can supersede the power of the court to order that information be produced in discovery. I cannot, therefore, conclude on the information provided by the Union that this undisclosed confidential settlement agreement between the Union and a third party bars the production of the communications sought by Bobo.
>
> The Union, alternatively, requests an *in camera* review by the court of the communications to be produced and the settlement agreement prior to any production. A party is not entitled, as a matter of right, to an *in camera* hearing when privilege is asserted. Before engaging in an *in camera* review to determine whether privilege is applicable, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence establishing an applicable privilege or that the privilege is outweighed by other rights. Given that the Union has presented no factual evidence to warrant an *in camera* review, I deny its motion for an in camera-review hearing.

*Id.* at PAGEID # 3962–63 (internal citations and quotations omitted). But, "[r]ecognizing the potential risk of retaliation against union members[,]" the state court granted NJASAP's motion for a protective order in part and subjected NJASAP's production to several restrictions. *Id.* at PAGEID # 3963.[2]

---

[2] The Discovery Order included the following protections: "(1) The documents produced by the Union from its private online message board, and any copies thereof, may not be used outside of this case; (2.) The documents may be shared only with: the court and court personnel, attorneys and their staff, the parties, witnesses, expert witnesses, and court reporters; (3.) Documents must be labeled "Confidential - Subject to Protective Order"; (4.) All documents produced must be returned to the Union at the end of this case, or if they contain work product, destroyed by Bobo's attorneys; and (5.) With leave of court and for good cause shown, these documents, when filed in court, may be filed under seal if redacted versions are attached to the related filing on the public docket." Discovery Order at PAGEID # 3963.

Rather than appeal the Discovery Order,[3] NJASAP moved for a TRO in this Court (two weeks after receiving the Discovery Order).

## C. NJASAP's Motion for a TRO

In its TRO Motion, NJASAP seeks a mandatory injunction requiring Bobo to rescind his state-court discovery request and a negative injunction requiring Bobo to refrain from requesting communications from the Message Board going forward. ECF No. 148. NJASAP premises its motion on a line in a letter that the Settlement Agreement required NetJets managers to send. Mot. Ex. A, ECF No 148, PAGEID #: 3952 ("Letter"). In the Letter, NetJets told its managers they should "not request or accept content originally posted on the NJASAP Message Board" "unless required by law[.]" *Id.* NJASAP reads the Letter (including this line) as an operative part of the Settlement Agreement. A NetJets manager thus violates the Settlement Agreement, on NJASAP's view, if they "request" Message Board posts. And, NJASAP continues, the ban on "request[s]" extends to civil

---

[3] The Discovery Order may be a final appealable order. Under Ohio law, an order that "grants or denies a provisional remedy" is final if:
>    (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy[, and]
>    (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

Ohio Rev. Code § 2505.02(B)(4). On that basis, Ohio courts have held some discovery orders to be final and appealable. *See, e.g., Burnham v. Cleveland Clinic*, 89 N.E.3d 536, 544 (Ohio 2016) ("An order compelling the production of materials alleged to be protected by the attorney-client privilege is a final, appealable order under R.C. 2505.02(B)(4)").

discovery requests. Ergo, Bobo breached this obligation by requesting Message Board screenshots through discovery in his state court defamation case.

NetJets, in response, denies that a civil discovery request violates the Settlement Agreement. The plain language of the Settlement Agreement, it argues, only obligates NetJets' CEO and Compliance Officer to send the Letter to NetJets managers. In NetJets' view, the recipients of the letter (NetJets managers) had no contractual obligation to obey its contents. Mining a similar vein, NetJets asserts that the Settlement Agreement does not bind Bobo, who was not a party to it. Even if it had any operative legal effect on Bobo, according to NetJets, the "request" language in the letter does not extend to civil discovery requests (much less prohibit a court from ordering production). NetJets closes by invoking the Anti-Injunction Act. 28 U.S.C.A. § 2283.

Bobo has also moved to intervene. Mot., ECF No. 149.

## II. DISCUSSION

### A. Legal Framework

Before reaching the merits, a Court must determine whether it has jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). No party here challenges this Court's jurisdiction, but the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citations omitted).

Federal courts' jurisdiction "is confined within such limits as Congress sees fit to prescribe." *The Francis Wright*, 105 U.S. 381, 385 (1881); *accord Keene Corp. v. United States*, 508 U.S. 200, 207 (1993). Congress has prescribed jurisdiction to review state court judgments to the United States Supreme Court only, not to lower federal courts. See 28 U.S.C. § 1257. And so, by negative inference, lower federal courts (like this District Court) lack jurisdiction to review state court judgments. See *Kovacic v. Cuyahoga Cnty. Dep't of Child. and Fam. Servs.*, 606 F.3d 301, 309 (6th Cir. 2010). This negative inference is called the *Rooker-Feldman* doctrine. See generally *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

Under the *Rooker-Feldman* doctrine, as fully stated in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, this Court lacks jurisdiction in "cases brought by the state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280 (2005). All aspects of this description are important, but "[t]he key words are 'review' and 'judgment.'" *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 406 (6th Cir. 2020) (Sutton, J., concurring). The Court analyzes these "key words" in reverse order.

B. Application

    1. **The Discovery Order is a "Judgment."**

Although the canonical *Rooker-Feldman* cases involve final judgments of the highest state courts, the doctrine also covers interlocutory orders from lower

state courts. *RLR*, 4 F.4th at 396; *see also Pieper v. Am. Arb. Ass'n*, 336 F.3d 458, 461–65 (6th Cir. 2003). The logic of applying *Rooker-Feldman* to interlocutory orders from lower state courts is "obvious[,]" the Sixth Circuit observed: "[i]f lower federal courts can't review the final product of state-court litigation, why should a lower federal court entertain an interlocutory appeal so long as a state court hasn't yet come to a conclusion?" *RLR*, 4 F.4th at 386; *see also Pieper*, 336 F.3d at 464 ("To hold otherwise would allow potential relitigation of every state-court order"). So, the Discovery Order qualifies as a "judgment," even if[4] it is interlocutory. *Desmond v. Gains*, 183 N.E.3d 1229, 1236 (Ohio App. 7th Dist. 2022) ("Discovery orders generally are interlocutory[.]").

2. **NJASAP asks the Court to "Review" the Discovery Order.**

Courts decide whether a plaintiff seeks review of a state-court judgment by looking at the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). If the source of a plaintiff's injury is a state court judgment, then *Rooker-Feldman* bars jurisdiction. But if not—if the source of a plaintiff's injury is something else, such as third-party[5] action—then lower federal courts have jurisdiction. The Sixth Circuit

---

[4] For the reasons noted above, *see*, *supra*, n.3, the Discovery Order might be final and appealable (not interlocutory). Final appealable orders are more quintessentially "judgments" than interlocutory orders for *Rooker-Feldman* purposes. *See RLR*, 4 F.4th at 399–406 (Clay, J., dissenting). So if the Discovery Order is final and appealable, that would reinforce the Court's conclusion the Discovery Order is a "judgment" justifying *Rooker-Feldman* application.

[5] A party other than a state court or the state court loser—often the "state court winner."

differentiates barred claims from valid claims by sorting them between two hypothetical cases:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.
>
> Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "deny a legal conclusion" reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* at 394 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87–88 (2d Cir.2005)) (cleaned up).

If a case falls between these two poles, the state court order may still qualify as the "source of the injury" for *Rooker-Feldman* analysis. For example, when a third-party acts under the aegis of a state court judgment, *Rooker-Feldman* bars a plaintiff's challenge to those acts. *See id.* (citing *Hoblock*, 422 F.3d at 88); *see also Pieper*, 336 F.3d at 460–61.

The source of the injury here parallels that in *Pieper*. In *Pieper*, one party moved a state court to compel arbitration (just as Bobo moved a state court to compel discovery here). The state court granted that motion to compel (both in *Pieper* and here). The "state court loser" then sued in federal court, seeking an injunction (of the arbitration in *Pieper* and of the production request here). Based on these facts, the Sixth Circuit in *Pieper* affirmed the district court's holding that *Rooker-Feldman* doctrine barred its jurisdiction, even though the injury originally traced back to the "state court winner's" motion to compel arbitration. Applying *Pieper*'s logic here,[6] this Court holds that it lacks jurisdiction because of the *Rooker-Feldman* doctrine, even though Plaintiff's injury traces back to Bobo's motion to compel discovery.[7]

---

[6] Plaintiff might protest that *Pieper* was decided before the U.S. Supreme Court cabined *Rooker-Feldman* doctrine in *Exxon v. Saudi Basic*. Yet *Pieper* remains good law; the Sixth Circuit has said so expressly: "[w]e developed the source-of-the-injury test to implement *Exxon*'s holding, and *Pieper* faithfully applies that test." *RLR*, 4 F.4th at 392; *see also id.* at 390 ("*Pieper* has not been overruled by our en banc court. And the Supreme Court has not offered any 'directly applicable' analysis that is inconsistent with *Pieper*. So *Pieper* binds us.").

[7] Circumstantial evidence corroborates that the Discovery Order is the source of NJASAP's injury. Bobo first issued the discovery request that NJASAP complains of in August 2024. NJASAP could have moved this Court for an injunction right then, but instead it sat on its hands, for months. NJASAP sought to involve this Court only after the state court issued its Discovery Order (and, even then, waited another two weeks). That timing bolsters the Court's conclusion that the Discovery Order is the source of NJASAP's injury for *Rooker-Feldman* doctrine purposes.

### III. CONCLUSION

Because the Court lacks jurisdiction under *Rooker-Feldman* doctrine to issue the injunction NJASAP requests, NJASAP's Motion for a TRO is **DENIED**. NJASAP's Motion requests an injunction only, even though NJASAP styled its Motion as a motion for both a TRO "*and* to enforce the Settlement Agreement." Having rejected the only remedy NJASAP seeks, the Court disposes of NJASAP's entire Motion. Bobo's motion to intervene is accordingly **DENIED AS MOOT**.

The Clerk shall terminate ECF Nos. 148 and 149 as pending motions.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT