IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NETJETS ASSOCIATION OF SHARED
AIRCRAFT PILOTS,

        Plaintiff,

v.

        Civil Action 2:14-cv-2487
        District Judge Michael H. Watson
        Magistrate Judge Kimberly A. Jolson

NETJETS, INC., et al.,

        Defendants.

## ORDER

Before the Court is Plaintiff's Motion for Leave to File Under Partial Seal Its Motion to Enforce Settlement Agreement and for Permanent Injunction, (Doc. 158). Because Plaintiff does not meet its high burden to seal, the Motion is **DENIED**.

### I. BACKGROUND

Plaintiff, a labor organization representing approximately 3,000 pilots employed by Defendant NetJets Aviation, Inc., filed this action on December 2, 2014. (*See* Doc. 1; Doc. 136 at 1–2 (summarizing the factual background of the case)). Plaintiff describes the case as one that "revolves around labor relations in the airline industry, specifically efforts to block unionizing at NetJets or otherwise impair [Plaintiff's] operations." (Doc. 158 at 4). In particular, Plaintiff alleges that Defendants Todd Weeber and various John Doe Defendants "gained unauthorized access to a confidential Union message board and obtained private Union communications." (Doc. 136 at 1–2). Further, Defendants NetJets Aviation, Inc., and NetJets, Inc., allegedly "used social media to: coerce, intimidate, and retaliate against Union members for supporting the Union; interfere with the Union's

internal election procedures; and ultimately undermine the Union's ability to represent its members." (*Id.* at 2).

After years of litigation, the parties reached a settlement agreement and stipulated to the case's dismissal. (Doc. 143; Doc. 144 (retaining jurisdiction to enforce the parties' settlement agreement)). But that resolution did not last. On December 16, 2024, Plaintiff filed several motions in this action, all of which arise out of ongoing litigation in the Delaware County, Ohio, Court of Common Pleas. *See Alan Bobo v. NetJets Ass'n of Shared Aircraft Pilots*, No. 23 CV H 09 0662 (Delaware C.P. Sept. 15, 2023). In that case, Alan Bobo, the Chief Operating Officer for Defendant NetJets, Inc., brings a defamation claim against Plaintiff based on allegedly false statements made about Mr. Bobo. (Doc. 149-2 at 2). During discovery, Mr. Bobo requested materials sent through Plaintiff's email listserv and postings published on Plaintiff's website. (*Id.* at 4). In response, Plaintiff asserted that the settlement agreement reached in this case prohibited Plaintiff from disclosing those materials. (*Id.*). Ultimately, the Delaware County Court of Common Pleas ordered the materials be disclosed. (*Id.* at 5). Plaintiff then sought a temporary restraining order from this Court to prevent those disclosures. (*See* Doc. 148). The Court denied that request. (Doc. 153).

Now, Plaintiff intends to file a motion to enforce the parties' settlement agreement and obtain a permanent injunction. (Doc. 158). But first, Plaintiff seeks the Court's leave to file portions of that motion under seal. (*Id.*). The Court has reviewed the materials at issue *in camera*, and the matter is ripe for review. (*Id.* (unopposed motion to seal); Doc. 159 (ordering Plaintiff to send its proposed redactions to the Court for *in camera* review)).

**II.    STANDARD**

Courts distinguish between limiting public disclosure of information during discovery versus the adjudicative stage of a case. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). "The line between these two stages, discovery and adjudicative, is crossed when

2

the parties place material in the court record." *Id.* (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Id.* (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). For this reason, the moving party has a "heavy" burden of overcoming a "'strong presumption in favor of openness' as to court records." *Id.* (quoting *Brown & Williamson*, 710 F.2d at 1179).

"[I]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access." *Id.* at 308 (citation and quotations omitted). "[T]he seal itself must be narrowly tailored to serve" the reason for sealing, which requires the moving party to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305–06 (quotation omitted). Ultimately, the movant must show that "disclosure will work a clearly defined and serious injury . . . . And in delineating the injury to be prevented, specificity is essential." *Id.* at 307–08 (internal citations and quotations omitted).

In sum, to overcome the "strong presumption in favor of openness," parties who move to seal documents must demonstrate the three elements laid out in *Shane Group*: "(1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019). And the parties seeking to seal documents must demonstrate "document-by-document, line-by-line" why they meet their burden to seal. *Shane Grp., Inc.*, 825 F.3d at 308. Importantly, the Court's obligation to explain its reasoning for sealing records "is independent of whether anyone objects to it." *Id.* at 306 (citing *Brown & Williamson*, 710 F.2d at 1176).

### III. DISCUSSION

Before undertaking the *Shane Group* analysis, the Court addresses two preliminary matters. First, Plaintiff says it seeks to redact from its forthcoming motion to enforce (1) the entirety of the parties' settlement agreement and (2) any references to its "substantive contents." (Doc. 158 at 1). Upon review of Plaintiff's proposed redactions, however, the Court sees that Plaintiff also wants to redact information related to litigation in this Court and the Delaware County Court of Common Pleas—most of which is publicly available. (*See* Unredacted Motion at 1, 2–3, 19–20 (reviewed *in camera*)). Plaintiff offers no compelling reason why the Court should do so. (*See generally* Doc. 158 (discussing why the settlement agreement should be sealed only)). As such, the Court **DENIES** these proposed redactions.

Second, Plaintiff suggests that since the Court has sealed confidential business information in this case before, the Court should grant Plaintiff's instant Motion to seal as well. (Doc. 158 at 4; Doc. 97 (sealing confidential business information within a motion to enforce an oral settlement agreement)). But the two requests are not similar. For instance, the Court previously allowed the parties to redact "operational data about . . . flight operations, customer relationships, and labor relations" and found that disclosure would harm NetJets' competitive standing. (Doc. 97 at 1–2). The Court did not seal anything else. (*Id.*; *see also* Doc. 115 at 3 (noting that only "a small amount of information from one document" was sealed from the public docket)). In its instant Motion, Plaintiff does not say that the settlement agreement contains any of this data. (*Cf.* Doc. 158 at 5 (comparing the two request to seal by saying the settlement agreement does not contain information relevant "to the facts underlying this litigation")). Therefore, the reasons that justified sealing in the first request are not present here, and the Court cannot grant Plaintiff's Motion on this basis.

Those issues aside, the Court now turns to the merits of Plaintiff's arguments to seal the settlement agreement and any references to it within its forthcoming motion. Plaintiff contends it has

compelling interests in the agreement's non-disclosure because it contains confidential settlement discussions and business information that should not be publicly revealed. (*Id.* at 4–7). The Court disagrees.

First, "[t]he Sixth Circuit recognizes a privilege only for the *conduct and statements* made during settlement negotiations," not for "finalized settlement agreements." *Schnatter v. 247 Grp., LLC*, No. 3:20-cv-3, 2024 WL 4846216, at *4 (W.D. Ky. Nov. 20, 2024) (citing *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (2003)) (emphasis in original); *see also Renfrow-Pike v. Bruce*, No. 3:21-cv-178, 2022 WL 1571768, at *3–4 (W.D. Ky. May 18, 2022) (noting the same). After reviewing the parties' agreement *in camera*, the Court finds that it merely describes the background underlying the parties' litigation and the terms to which they agreed. In other words, it does not contain privileged settlement negotiations requiring a blanket seal of all its terms. *See Schnatter*, 2024 WL 4846216, at *4 (finding a settlement agreement not worthy of sealing where it only mentioned the underlying disputes, the existence of an agreement, and its terms).

Nor does the agreement contain the type of confidential business information that usually warrants sealing. Plaintiff says the parties' agreement shows what they "were willing to do to promote harmonious relations," and if it is disclosed, "[c]ompetitors and even employees and members without a need-to-know would gain insight and a model for pending and future negotiations." (Doc. 158 at 4). In the past, this Court has recognized a company's compelling interest in sealing "when disclosure [of certain materials] on the public docket would 'give a significant advantage to competitors of the parties in this action.'" *Pro. Investigating and Consulting Agency, Inc. v. SOS Sec. LLC*, No. 2:19-cv-3304, 2022 WL 4376227, at *2 (S.D. Ohio Sept. 22, 2022) (quoting *Total Quality Logistics, LLC v. Riffe*, No. 1:19-cv-23, 2020 WL 5849408, at *2 (S.D. Ohio Sept. 30, 2020)).

But the Court cannot say disclosure of the settlement agreement would give the parties' competitors such an advantage here. To start, much of the information Plaintiff seeks to seal is already

5

publicly available through filings in the parties' various lawsuits. For instance, Plaintiff requests to redact the parties' stipulation of dismissal in this case, which has been on the public docket for several years. (*See* Doc. 143); *Harter v. Franklin Cnty. Bd. of Comm'rs*, No. 2:23-cv-2995, 2024 WL 4149245, at *2 (S.D. Ohio Sept. 11, 2024) (denying a request to seal information already publicly available in a motion for summary judgment). More still, the agreement contains multiple, boilerplate contract provisions, none of which would give competitors the upper hand in future negotiations. *See Anthony-Thomas Candy Co. v. Nestle USA, Inc.*, No 2:24-cv-3938, 2024 WL 4456912, at *4 (S.D. Ohio Oct. 10, 2024) (declining to seal standard contract provisions). Indeed, beyond general statements that the entire agreement is confidential, Plaintiff fails to provide any further explanation on which portions of the settlement agreement would be harmful if disclosed. (Doc. 158 at 4–5). And when parties want to keep information from the public, they must identify with "specificity" "the injury to be prevented." *Shane Grp., Inc.*, 825 F.3d at 307–08. Without more, the Court cannot find that Plaintiff has a compelling business interest that should shield the settlement agreement from the public's eye.

Plus, even if Plaintiff had a compelling interest in sealing at least part of the agreement, the public's interest outweighs it here. As Plaintiff explains, this action concerns "labor relations in the airline industry," as well as Defendants' alleged breach of an agreement with a sizable labor organization. (Doc. 158 at 4). Therefore, the public's interest in the "subject matter" of this case is not as minimal as Plaintiff suggests. *Shane Grp., Inc.*, 825 F.3d at 305 ("[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access."); (Doc. 158 at 4–5). By moving to enforce its terms, Plaintiff makes the parties' settlement agreement a central issue in this case. *See Machliet v. Hutton*, No. 1:20-cv-270, 2021 WL 6427932, at *1 (E.D. Tenn. Jan. 22, 2021) (denying a motion to seal a settlement agreement in an action where plaintiffs alleged defendants breached its terms). As a result, the public has a heightened interest in viewing its exact terms, so they can understand the Court's interpretation of the agreement and how

certain individuals allegedly violated it.  *Rudd Equip. Co., Inc. v. Volvo Const. Equip. N.A., LLC*, No. 3:19-cv-778, 2020 WL 6946577, at *3 (W.D. Ky. Nov. 25, 2020) (saying a decision on a breach of contract claim will include a discussion of the agreement's terms); *Shane Grp., Inc.*, 825 F.3d at 305 ("[T]he public has an interest in ascertaining what evidence and records [the Court] relied upon in reaching [its] decisions."); *cf. Am. Consol. Indus., Inc. v. Blasingim*, Nos. 1:19-cv-137, 5:17-cv-2253, 2022 WL 22730336, at *3 (N.D. Ohio June 16, 2022) (sealing parts of asettlement agreement where privacy interests of unrelated third parties were implicated and where other material in the record allowed the public to understand "the purpose of the settlement agreement").

Finally, Plaintiff's request is not narrowly tailored.  Plaintiff wishes to seal the parties' entire settlement agreement, as well as references to its contents within its forthcoming motion.  Yet, as discussed, much of the parties' settlement agreement contains standard contract language.  And Plaintiff's other proposed redactions include information that is available on public court dockets.  Plaintiff "cannot expect to reap the benefits of an overbroad request by placing the onus on the Court to determine on a 'line-by-line basis . . . that specific information in the court record meets the demanding requirements for a seal.'"  *Rudd Equip. Co., Inc.*, 2020 WL 6946577, at *3 (quoting *Shane Grp., Inc.*, 825 F.3d at 308); *U.S. ex rel. Scott v. Humana*, No. 3:18-cv-61, 2021 WL 4449277, at *9 (W.D. Ky. Sept. 28, 2021) (stating the same).  As it stands, Plaintiff's request to seal is much too broad, and the Court declines to do Plaintiff's work for it.  *Cf. Anthony-Thomas Candy Co.*, 2024 WL 4456912, at *4 (declining to broadly seal an agreement and sealing only provisions "of particular concern" identified by the movant).

In sum, Plaintiff has not met its burden to seal the proposed materials, and its Motion to do so (Doc. 158) is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File Under Partial Seal Its Motion to Enforce Settlement Agreement and for Permanent Injunction, (Doc. 158), is **DENIED**.

IT IS SO ORDERED.


Date:  February 12, 2025	/s/ Kimberly A. Jolson
　　　　　　　　　　　　　　　　　　　　　　　KIMBERLY A. JOLSON
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE